# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\*\*\*

| | |
|---|---|
| NATHAN A. JOYCE, | Case No. 2:16-cv-02736-VCF |
| Plaintiff, | **ORDER** |
| vs. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

This matter involves Plaintiff Nathan A. Joyce's appeal from Defendant Nancy A. Berryhill's (the "Commissioner's") final decision denying Joyce disability insurance benefits and supplemental security income. Before the Court are Joyce's Motion for Reversal and/or Remand (ECF No. 17), the Commissioner's Cross-Motion to Affirm and Response to Plaintiff's Motion for Reversal and/or Remand (ECF No. 18), and Joyce's Reply (ECF No. 20). The undersigned United States Magistrate Judge has received the written consent of both parties and now presides over this case under 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (*See* ECF No. 21). The Court has reviewed the record in this case, the briefs of the parties, and Ninth Circuit law. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## I. BACKGROUND

Nathan Joyce is a 51-year-old male who filed a Title II application for disability insurance benefits and a Title XVI application for supplemental security income on April 4, 2013. (*See* ECF No.

1

16-1 at 221, 228).[1] For both applications, Joyce is alleging disability beginning on September 26, 2012. (*Id*.). The claims were denied initially on September 5, 2013, and on reconsideration on March 7, 2014. (*Id*. at 155, 165, 170). Shortly thereafter, Joyce filed a written request for hearing. (*Id*. at 175). In May 2015, Joyce, Joyce's attorney, and vocational expert Gerald Davis, appeared and testified at a hearing in Las Vegas. (*Id*. at 49). In June 2015, the Administrative Law Judge ("ALJ") issued an unfavorable decision. (*Id*. at 22). Joyce appealed. (*Id*. at 17). The Appeals Council declined review in September 2016, making the ALJ's decision final. (*Id*. at 1). Joyce then timely initiated the instant action. (*See* ECF No. 1).

## II. DISPUTED ISSUE

Joyce's appeal challenges the ALJ's decision on one issue: whether the ALJ articulated clear and convincing reasons for discounting Joyce's subjective testimony and complaints?

## III. STANDARD OF REVIEW

The Fifth Amendment prohibits the Government from depriving persons of property without due process of law. (*See* U.S. Const. amend. V.). Social security claimants have a constitutionally protected property interest in social security benefits. (*See Mathews v. Eldridge*, 424 U.S. 319 (1976); *see also Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990)). Where, as here, the Commissioner of Social Security renders a final decision denying a claimant's benefits, the Social Security Act authorizes the District Court to review the Commissioner's decision. (*See* 42 U.S.C. § 405(g); *see also* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73).

---

[1] For ease of reference, the Court will cite to the Administrative Record ("AR") by its electronic filing number: ECF No. 16-1.

2

The District Court's review is limited. (*See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("For highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress 'places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency.'" (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014)))).

The Court examines the Commissioner's decision to determine whether (1) the Commissioner applied the correct legal standards and (2) the decision is supported by "substantial evidence." (*See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004)). Substantial evidence is defined as "more than a mere scintilla" of evidence. (*See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). This means such relevant "evidence as a reasonable mind might accept as adequate to support a conclusion." (*See Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938) (defining "a mere scintilla" of evidence); *see also Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) ("The court must consider the record as a whole and weigh 'both the evidence that supports and the evidence that detracts from the ALJ's' factual conclusions." (quoting *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)))).

If the evidence supports more than one interpretation, the Court must uphold the Commissioner's interpretation. (*See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1988) ("we may not reweigh evidence, try the case *de novo*, or overturn the Commissioner's decision if the evidence preponderates against it.") (quotation marks and citation omitted). In weighing the evidence and making findings, the ALJ must apply the proper legal standards. (*See Gutierrez*, 740 F.3d at 523 (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003))).

/ / /

## IV. THE ALJ'S 2015 DECISION

The ALJ followed the five-step sequential evaluation process set forth at §§ 404.1520 and 416.920 and issued an unfavorable decision against Joyce on June 18, 2015. (*See* ECF No. 16-1 at 22). At step one, the ALJ found that Joyce had not engaged in substantial gainful activity from his alleged disability onset date of September 26, 2012. (*Id*. at 27). At step two, the ALJ found that Joyce had the following severe medical impairment for Social Security purposes: disorder of the lumbar spine (20 C.F.R. 404.1520(c) and 416.920(c). (*Id*.).

At step three, the ALJ determined that Joyce did not have an impairment, or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (*Id*. at 29). Continuing the process at step three, the ALJ reviewed the evidence within the record and found that Joyce demonstrated the RFC "to perform light work … except he cannot climb ladders, ropes, or scaffolds." (*Id*.). The ALJ found that Joyce "needs to avoid concentrated exposures to excessive vibration, and all exposure to hazardous machinery, unprotected heights, and operational control of moving machinery." (*Id*.). The ALJ also found that Joyce "can stand and/or walk for four hours in an eight-hour day." (*Id*.).

At step four, the ALJ, relying on the testimony of vocational expert Dr. Gerald Davis, found that Joyce was unable to perform his past relevant work as a stock clerk, fast food worker, cabinet assembler, cook, kitchen helper, construction worker, laborer, carpenter, roofer, and drywall installer. (*Id*. at 32). At step five, the ALJ again relied on the testimony of the vocational expert, and considering Joyce's age, education, work experience, and RFC, found that there were jobs that existed in significant numbers in the national economy that Joyce could perform, such as locker room attendant and electrical assembler. (*Id*. at 33). Based on these findings, the ALJ concluded that Joyce was not disabled from September 26,

2012, through June 18, 2015 (the date of the ALJ's decision), and denied his application for disability insurance benefits and supplemental security income. (*See* ECF No. 16-1 at 34).

## V. DISCUSSION

Joyce raises one issue on appeal. Joyce argues that the ALJ failed to properly evaluate his pain in the credibility assessment. The Commissioner disputes this assertion. For the reasons stated below, the Court finds that the ALJ's credibility finding is free from legal error and supported by substantial evidence.

### A. Legal Standard

The Ninth Circuit relies on a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the stated symptoms. (*See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 503 F.3d 1028, 1035-36 (9th Cir. 2007)); *see also Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) ("The ALJ is responsible for determining credibility." (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)))). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." (*See Lingenfelter*, 503 F.3d at 1036 (citation and quotation marks omitted)).

Second, if the claimant produces medical evidence of an underlying impairment, and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if the ALJ gives "specific, clear and convincing reasons" for the rejection. (*See Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter*, 504 F.3d at 1036)).[2] To support a finding of less than fully credible,

---

[2] To preserve the issue for any potential appeal, the Commissioner maintains that the Ninth Circuit's "clear and convincing reasons" standard for reviewing an ALJ's assessment of a claimant's subjective accounts is inconsistent with the deferential

5

the ALJ's findings must be "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain.'" (*See Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)). In weighing a claimant's credibility, the ALJ may consider factors such as "reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." (*See Orn v. Astrue*, 495 F.3d 625, 636-639 (9th Cir. 2007); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)). If the "ALJ's credibility finding is supported by substantial evidence in the record, [a court] may not engage in second-guessing." (*See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002)).[3]

### B. Arguments

Joyce argues that the ALJ failed to provide clear and convincing reasons for rejecting his testimony about his subjective symptoms for two reasons. (*See* ECF Nos. 17 at 7; 20 at 3-5). First, Joyce asserts that the ALJ did not properly consider the extent of Joyce's daily activities when assessing his subjective complaints. Joyce maintains that "routine daily activities and performing some household chores … are not typically grounds to discredit a claimant." (*See* ECF No. 20 at 4). Joyce also argues that the ALJ "failed to adequately explain how Joyce's benign activities translate into the ability to

---

substantial evidence standard set forth in 42 U.S.C. § 405(g) and with agency regulations and rulings specifying the rationale its adjudicators should provide in support of their findings. (*See* ECF No. 18 at 4, n.2).

[3] At the time of the ALJ's decision, the credibility analysis was governed by Soc. Sec. Rul. 96-7p. Effective March 28, 2016, Soc. Sec. Rul. 16-3p superseded Soc. Sec. Rul. 96-7p. Soc. Sec. Rul. 16-3p continues much of the previous guidance in Soc. Sec. Rul. 96-7p, including the two-step approach to the evaluation of pain. Soc. Sec. Rul. 16-3p, however, focuses not on the concept of credibility in assessing pain testimony but instead on whether claimants' statements support their alleged symptoms. (*See* Carolyn Kubitschek & Jon Dubin, *Social Security Disability Law and Procedure in Federal Court*, §§ 4:2, 484 (2017)). Neither party has raised the issue of whether Soc. Sec. Rul. 16-3p or Soc. Sec. Rul. 96-7p governs the Court's review of the ALJ's evaluation of Joyce's statements regarding the intensity, persistence, and limiting effect of his symptoms. The ALJ's decision regarding Joyce's claim was issued on June 18, 2015. Thus, Soc. Sec. Rul. 96-7p governed the ALJ's decision and the Court will review the ALJ's decision under the guidance provided in Soc. Sec. Rul. 96-7p.

perform full-time work on a sustained basis." (*See* ECF Nos. 17 at 8; 20 at 4). Second, Joyce argues that the ALJ improperly discounted his subjective complaints due to the conservative nature of his treatment because the ALJ's rationale lacks specificity to allow for meaningful review. (*See* ECF No. 17 at 9).

The Commissioner contends that the ALJ provided valid reasons for finding Joyce's statements and testimony not fully credible. (*See* ECF No. 18 at 7). In particular, the Commissioner asserts that the ALJ properly considered Joyce's daily activities, Joyce's conservative medical treatment, and the lack of objective medical evidence. (*Id*. at 4-7). The ALJ's findings as to each of these factors was, the Commissioner argues, supported by the record and in accordance with Ninth Circuit case law. (*Id*.). In short, the Commissioner argues that the ALJ properly evaluated Joyce's subjective complaints in making his credibility determination. (*Id*. at 7).

### C. Analysis

After reviewing the administrative record, the parties' briefs, and applicable law, the Court finds that the ALJ provided clear and convincing reasons for finding Joyce's testimony not fully credible. The ALJ first found that Joyce's medically determinable impairment—i.e., disorder of the lumbar spine—could reasonably be expected to cause the alleged symptoms. (*See* ECF No. 16-1 at 31).[4] But the ALJ found that Joyce's subjective testimony concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible for 3 reasons. (*Id*.).

#### a. Activities of Daily Living

First, the ALJ found that Joyce has "described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (*Id*.). The ALJ noted Joyce's statements and testimony that his disabling back impairment limited his ability to perform basic

---

[4] The ALJ's decision made no specific finding as to malingering.

work related activities. (*Id*. at 30). The ALJ pointed to Joyce's statements that "he is unable to walk as fast as he previously could," "bending causes pain in his back," and "his impairment affects his ability to perform many exertional and postural activities." (*See id*. at 30; *see also id*. at 63 ("[Question] [I]s it your back essentially that prevents you from working, back pain? [Answer] Yes, the lumbar spine.")).

The ALJ then compared Joyce's statements and testimony concerning the intensity, persistence, and limiting effects of these symptoms, with his daily activities. The ALJ referred to a report filled out by Joyce, which provides information about his daily activities. (*See* ECF No. 16-1 at 31, 28). Joyce reports that he lives in a homeless shelter. (*Id*. at 283-289). During the day, Joyce goes to a casino and watches television. (*Id*.). He previously traveled about on a scooter, but testified at the hearing that his scooter had been stolen. (*Id*. at 64-65). Joyce reads the newspaper and discusses sports and the news. (*Id*.). He shops for food and personal items in stores. (*Id*.). Joyce is outside every day. (*Id*.). He has no problems with personal care and is able to do household chores and laundry. (*Id*.). Given Joyce's complaints of disabling symptoms and limitations, the ALJ found Joyce's described daily activities were not limited to the extent one would expect. (*Id*. at 31). These findings are supported by the record.

Relying on *Lewis v. Apfel*, Joyce argues that a claimant's daily activities are not typically grounds to discredit a claimant. (*See* ECF No. 20 at 4). Joyce takes issue with the ALJ's reasoning that Joyce's daily activities were inconsistent with his testimony on his symptoms. The Commissioner argues that the ALJ may consider these daily activities in evaluating Joyce's credibility. (*See* ECF No. 18 at 5 (citing *Orn*, 495 F.3d at 639)).

Joyce's reliance on *Lewis v. Apfel* is not persuasive. In *Lewis*, the Ninth Circuit reasoned that the "ALJ should not consider activities like taking care of oneself, household tasks, hobbies, school attendance, club activities, or social programs to be substantial gainful activities." *See Lewis*, 236 F.3d at 516. But this does not mean daily habits are off-limits for credibility determinations. (*See Martin v.*

8

*Colvin*, No. 2:14-cv-01092-MMD-NJK, 2016 WL 3545748, at *4 (D. Nev. June 28, 2016)). An ALJ may consider daily activities in assessing the claimant's credibility. (*See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *see also Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) ("While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting … Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (upholding denial of disability benefits where claimant could "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries")). Here, the ALJ discredited Joyce's pain testimony and statements in part because his daily activities were not consistent his statements and testimony regarding debilitating back pain.

As noted in *Orn v. Astrue*, daily activities may be used to undermine a claimant's credibility where they (1) contradict the claimant's testimony, or (2) "meet the threshold for transferable work skills." (*See Orn*, 495 F.3d at 639; *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (finding that the ALJ provided clear and convincing reasons to reject claimant's subjective testimony on the ground that claimant's activities, among other things, suggested that claimant's later claims about the severity of his limitations were "exaggerated."); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (upholding an adverse credibility finding where the ALJ cited, among other things, the claimant's "tendency to exaggerate" and "inconsistent statements")). The Court has already determined that the ALJ properly found that Joyce's daily activities contradict his allegations of subjective pain. On that ground alone, the ALJ was entitled to find that Joyce's daily activities undermined his credibility. The administrative record, however, also supports that Joyce's

9

daily activities were transferable to a work setting—that is, they bore a meaningful relationship to the activities of the workplace. (*See, e.g.*, ECF No. 16-1 at 31 ("[T]he claimant's record as a whole, including his good activities of daily living … support the claimant's ability to perform some work.")).

Indeed, Joyce's ability to engage in normal activities of daily living suggest that he is capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis. (*See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008)). The Ninth Circuit has stated, however, that "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." (*See Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014)). "'The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferrable to a workplace environment where it might be impossible to rest periodically or take medication.'" (*Id.* (quoting *Smolen v. Chater*, 80 F.3d 1272, 1287 n.7 (9th Cir. 1996))).

Joyce's description of his activities of daily living do not necessarily conflict with the inability to perform light work on a daily basis. But Joyce's ability to engage in such activities appears at odds with his complaints of debilitating back pain. Combined with the lack of objective medical evidence to account for his symptoms and conservative treatment, *infra*, the ALJ's finding that Joyce's testimony was not entirely credible was supported by clear and convincing reasons. To the extent the record could also support a finding that Joyce's complaints were not exaggerated, it is the ALJ's exclusive domain to resolve any ambiguities and inconsistencies. (*See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the plaintiff's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities)). What is more, while

"many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication," the ALJ incorporated rest periods into his RFC assessment by finding Joyce could stand or walk for only four hours in an eight-hour day. (*See* ECF No. 16-1 at 31-32). Indeed, the ALJ assessed greater limitations than the state agency physicians who opined that Plaintiff could stand or walk for six hours in an eight-hour day. (*Id*.). Joyce may disagree with the ALJ's interpretation of the record, but the ALJ was permitted to make an adverse credibility determination based on Joyce's daily activities.[5]

### b. The Extent of Treatment

Second, the ALJ noted that "[a]lthough … [Joyce] has received treatment for the allegedly disabling impairment, that treatment has been essentially routine and/or conservative in nature." (*See* ECF No. 16-1 at 31). Joyce argues that the ALJ cannot discount his testimony due to conservative medical treatment because the ALJ's decision lacks specificity and never articulates what more aggressive treatments Joyce should have undergone. (*See* ECF Nos. 17 at 9; 20 at 4). The Court disagrees.

Conservative treatment alone may be sufficient to discount a claimant's testimony regarding severity of impairment. (*See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *see also Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995); *Meanel*, 172 F.3d at 1114 (rejecting subjective pain complaints where petitioner's "claim that she experienced pain

---

[5] *See Light v. Soc. Sec. Admin*., 119 F.3d 789, 792 (9th Cir. 1997) ("To find the claimant not credible the ALJ [may] rely … conflicts between [the claimant's testimony and [the claimant's] conduct, or on internal contradictions in that testimony."); s*ee also Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1196 (9th Cir. 2004) (finding that the ALJ properly discredited plaintiff's testimony, in part, by noting the contradictions in plaintiff's testimony that he could not return to work because of pain, yet also tends to his animals and walks outdoors); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("If the claimant runs marathons, as an extreme example, an ALJ could reasonably assume that the claimant's pain is not so debilitating as to prevent him from working").

11

approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received'")).

Although the ALJ explains his finding with less than ideal clarity, it is amply supported by the administrative record. The ALJ cites to various visitation reports, notes, and evaluations in the record that demonstrate the conservative nature of Joyce's treatment, including physical therapy, and the use of pain medication and a transcutaneous electrical nerve stimulation unit. (*See e.g.*, ECF No. 16-1 at 30 ("He was conservatively treated with analgesic medications."), ("He was provided with a TENS unit and continued on analgesic medication."); 376; 396 ("I have discussed with [Joyce] a series of treatment options including physical therapy … in which upon failure we may consider site-specific injection therapy thereafter. However, he is quite hesitant on any type of epidural injections, which he would like to only continue his oral pain management."); 426 (noting that Joyce "had been following [up] with the Nevada Spine Center, but now has decided not to follow up with them, and wants us to refill the medication."); 521 ("Had MRI in the past and was seen by ortho[pedic], in the past. Did not get any surgery done. Was referred to physical therapy and pain medications.")). The record further reflects that Joyce responded favorably to the conservative treatment. (*See e.g.*, ECF No. 16-1 at 30 ("In July 2014, the claimant exhibited worsening symptoms … Despite these findings, his subsequent examinations were generally unremarkable, suggesting improved symptoms. Specifically, the claimant was documented as having intact gait, no gross deformities, and normal range of motion."), 420.

Joyce's argument that "the record does not reflect that more aggressive treatment options are appropriate or available" also ignores the portions of the administrate record that the ALJ specifically cites to. (*See* ECF No. 17 at 9). For example, testimony at the hearing and statements in the record show that Joyce declined epidural injections and surgery to relieve his back pain. (*See* ECF No. 16-1 at 66-67 ("[Question] You were offered injections. Right? … [Answer] Yeah … And through consulting

12

with my own mother who has … suggested I get no back surgeries [Question] Okay. No injections, no surgery. [Answer] It's just old age, worn out spine. I'm going to let it go naturally until I can't stand it anymore."), 396 ("I have discussed with [Joyce] a series of treatment options including physical therapy … in which upon failure we may consider site-specific injection therapy thereafter. However, he is quite hesitant on any type of epidural injections, which he would like to only continue his oral pain management."). This is important because "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." (*See Warre v. Comm'r of Soc. Sec*. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); *see also Chaudhry*, 688 F.3d at 672 (noting permissible grounds for supporting an adverse credibility determination, including the failure to seek treatment)).

### c. Lack of Objective Medical Evidence

Third, Joyce objects to the ALJ's reliance on the lack of objective evidence as a basis for discounting Joyce's allegations of disabling back impairment. (*See* ECF Nos. 17 at 9-10; 20 at 4-5; 16-1 at 30). A "lack of medical evidence," to be sure, "cannot form the sole basis for discounting pain testimony." (*See Burch*, 400 F.3d at 681 (9th Cir. 2005)). But a lack of medical evidence "is a factor that the ALJ can consider in his credibility analysis." (*Id*.). Here, the lack of objective medical evidence, including "recent treatment notes showing normal gait, full strength, and normal range of motion" were one of several factors that the ALJ considered before discounting Joyce's testimony. (*See* ECF No. 16-1 at 30-32, 428, 430, 502, 505; *see also Regennitter v. Comm'r of Soc. Sec. Admin*., 166 F.3d 1294, 1297 (9th Cir. 1999) (noting that an ALJ's determination that a claimant's subjective complaints are "inconsistent with clinical observations" can satisfy the clear and convincing evidence requirement)). Thus, the ALJ properly considered the lack of objective medical evidence in his credibility determination of Joyce's testimony.

The Court finds that the ALJ provided clear and convincing reasons for finding Joyce's testimony less than entirely credible and those reasons are supported by "more than a mere scintilla" of evidence. The ALJ did not commit legal error.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Defendant Commissioner Nancy A. Berryhill's Cross-Motion to Affirm (ECF No. 18) is GRANTED. Plaintiff Nathan A. Joyce's Motion for Reversal and/or Remand (ECF No. 17) is DENIED.

IT IS FURTHER ORDERED that the Clerk is directed to enter judgment in accordance with this Order and close the case.

IT IS SO ORDERED.

DATED this 31st day of July, 2017.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE